UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| DOCTORS MEDICAL CENTER OF MODESTO, INC., a California Corporation,<br><br>　　　Plaintiff,<br><br>　　　　v.<br><br>PRINCIPAL MUTUAL LIFE INSURANCE COMPANY, a California Corporation, and DOES 1 through 25, inclusive,<br><br>　　　Defendant.<br>_____/ | NO. CIV. 08-1496 WBS EFB<br><br>ORDER RE: MOTION TO REMAND |

----oo0oo----

　　　Plaintiff Doctors Medical Center of Modesto, Inc. filed an action in state court to recover the remaining balance for medical treatment it provided to a subscriber of an ERISA plan that defendant Principal Mutual Life Insurance Company[1] administered.  Defendant removed the case to federal court, and

---

[1] Defendant contends its correct name is Principal Life Insurance Company.

1

plaintiff now moves to remand the case to the state court.

I.    <u>Factual and Procedural Background</u>

In 1986, plaintiff entered into a Hospital Services Agreement (HSA) with Stanislaus Foundation For Medical Care ("Stanislaus Foundation"), a nonprofit California corporation. (Compl. ¶ 5; <u>id.</u> Ex. A at HSA 6.)  In the HSA, Stanislaus Foundation promised to execute independent contracts with insurance companies, self-insured groups, and employee welfare benefit plans (collectively, "Payors") in which the Payors would agree to promote and offer incentives for their subscribers to use plaintiff's hospital.  (<u>Id.</u> Ex. A at HSA I.A.)  In exchange, plaintiff promised to provide Payors' subscribers with health care services at a reduced rate established in the HSA.  (<u>Id.</u> Ex. A at HSA I.B.)  As the HSA contemplated, plaintiff had a pre-existing contractual relationship with only Stanislaus Foundation, but its operations were affected by Stanislaus Foundation's contracts with Payors ("Payor Agreements") and Payor's contracts with their subscribers ("Benefit Agreements"). (<u>Id.</u> Ex. A at HSA I; <u>see also</u> <u>id.</u> Ex. A at HSA II.A (indicating that the Benefit Agreements "establish[] a Payor's obligation to the Patient for payment for medical, hospital and other health benefits").)

With respect to payments, the HSA provided that "[Stanislaus] Foundation shall contractually require Payors to compensate [plaintiff] those amounts specified in Exhibit 'B' [of the HSA] . . . for those Health Care services provided to a Patient in accordance with an applicable Benefit Agreement." (<u>Id.</u> Ex. A at HSA VIII.A.)  The HSA also stated that plaintiff

2

could collect the co-payment indicated in a subscriber's Benefit Agreement directly from the subscriber and could collect any unpaid balance from the subscriber only if the Payor failed to pay the remaining balance within sixty days.  (Id. Ex. A at HSA VIII.B.)

In 2000, plaintiff and Stanislaus Foundation executed a Hospital Rate Agreement Form, which included a reciprocity provision in which plaintiff agreed to provide services at the HSA rates to subscribers "covered under a Benefit Agreement administered by another Foundation for Medical Care," including Pacific Foundation for Medical Care ("Pacific Foundation").  (Id. Ex. A at Hospital Rate Agreement Form 2.)

Prior to the reciprocity agreement, Pacific Foundation had executed a written Payor Agreement with defendant.  (Id. at ¶ 7.)  Pursuant to plaintiff's reciprocity agreement, defendant was thus added to plaintiff's "Payor List" and was entitled to receive HSA's discounted rates for its subscribers.  (Id. at ¶¶ 7-8.)  On an unknown date, Pacific Foundation also allegedly executed an agreement with Stanislaus Foundation "that required" Pacific Foundation's Payors, such as defendant, to compensate plaintiff according to the amounts indicated in the HSA.  (Id. at ¶ 10.)

For two days in January 2006, plaintiff treated patient J.L., a subscriber allegedly covered by an ERISA Benefit Agreement defendant administered.  (Id. at ¶ 13.)  Two days prior to J.L.'s admission on January 17, 2006, plaintiff contacted defendant to verify J.L.'s eligibility and received an authorization for benefits.  (Id.)  After plaintiff treated J.L.,

1  she paid $2,500.00 and plaintiff billed defendant $85,800.37 for
2  the services rendered, which was automatically reduced to
3  $64,350.28 per the HSA.  (Id. at ¶ 14.)  Defendant contended that
4  it was responsible for only $31,820.15 and submitted that amount
5  to plaintiff.  (Id. at ¶ 15.)  Plaintiff subsequently sent two
6  appeals letters to defendant that requested the full $64,350.28,
7  but defendant refused to increase its payment.  (Id. at ¶ 16.)

8  　　　　On May 13, 2008, plaintiff filed a Complaint in state
9  court, alleging claims for: 1) breach of written contract
10 (referencing the HSA and defendant's Payor Agreement); 2) breach
11 of implied contract; 3) negligent misrepresentation; and 4)
12 quantum meruit.  Defendant removed the case to this court, and
13 plaintiff now moves to remand the case to the state court and
14 requests attorney's fees pursuant to 28 U.S.C. § 1447(c).

15 II.  Discussion

16 　　　　"Any civil action may be removed to federal district
17 court so long as original jurisdiction would lie in the court to
18 which the case is removed."  Matheson v. Progressive Speciality
19 Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003); 28 U.S.C. §
20 1441(a).  When a plaintiff moves to remand a case, the defendant
21 bears the burden of establishing that removal was proper.  Gaus
22 v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  Any questions
23 regarding the propriety of removal should be resolved in favor of
24 the party moving for remand.  Matheson, 319 F.3d at 1090.  If
25 removal was improper, "the district court lack[s] subject matter
26 jurisdiction, and the action should [be] remanded to the state
27 court."  Toumajian v. Frailey, 135 F.3d 648, 653 (9th Cir. 1998)
28 (citing 28 U.S.C. § 1447(c)).

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted).  "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears."  Stock W., Inc. v. Confederated Tribes of the Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989) (citing Cal. ex rel. Younger v. Andrus, 608 F.2d 1247, 1249 (9th Cir. 1979)).  District courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

"The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  California v. United States, 215 F.3d 1005, 1014 (9th Cir. 2000).  "One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character."  Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987).  "In such a case, even if the only claim in a complaint is a state law claim, if that claim is one that is 'completely preempted' by federal law, federal subject matter jurisdiction exists and removal is appropriate."  Toumajian v. Frailey, 135 F.3d 648, 653 (9th Cir. 1998) (citation omitted).

For ERISA to completely preempt a state law claim, not only must conflict preemption exist--which requires that "the state law claim 'relates to' an ERISA plan within the meaning of § 1144(a)"[2]--the claim must also "fall[] within the scope of ERISA's civil enforcement found in § 1132(a)." Toumajian, 135 F.3d at 654; see also Metro. Life Ins. Co., 481 U.S. at 64 ("ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law.") (citation omitted); see also Toumajian, 135 F.3d at 654 ("[E]ven if the district court found that the Complaint contained a state law claim that 'relates to' an ERISA plan, and is thus preempted by § 1144(a), the complaint is not removable to the federal court unless it is also encompassed within ERISA's civil enforcement scheme."). Despite the exclusion of federal ERISA claims in a plaintiff's complaint, a state law claim will fall within the scope of § 1132(a) if it "can be reasonably characterized as a claim under any of ERISA's civil enforcement provisions . . . ." Toumajian, 135 F.3d at 654 (citations omitted).

"Section 1132(a) of ERISA, by its express terms, limits the causes of action that are available under the statute, as well as by whom and against whom they may be brought." Id.

---

[2] A state law claim "'"relate[s] to" a covered employee benefit plan for purposes of § 1144(a) "if it [1] has a connection with or [2] reference to such a plan."'" Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 324 (1997) (citations omitted). The Ninth Circuit has "continued to rely on a 'relationship' test to determine the scope of ERISA's express preemption clause," which looks to "whether the state law encroaches on relationships regulated by ERISA, such as between plan and plan member, plan and employer, and plan and trustee." Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Group, Inc., 187 F.3d 1045, 1053 (9th Cir. 1999).

While providing different rights for each individual or entity, § 1132(a) grants civil enforcement rights only to a participant, a beneficiary, a fiduciary, an employer, a State, or the Secretary of Labor.  29 U.S.C. § 1132(a)(1)-(10); see also Harris v. Provident Life & Accident Ins. Co., 26 F.3d 930, 933 (9th Cir. 1994) ("[T]he Supreme Court has held that a federal court has no jurisdiction to hear a civil action under ERISA that is brought by a person who is not a 'participant, beneficiary, or fiduciary.'") (citation omitted).  ERISA's definitions in § 1002[3] preclude plaintiff from qualifying as any of the potential plaintiffs that ERISA vests with enforcement rights.  29 U.S.C. § 1002(5), (7), (8), (10), (13), (21)(A).  Therefore, ERISA does not grant plaintiff--a third party medical provider--the power to enforce its own rights.

Nonetheless, courts have found that third party medical

---

[3] See 29 U.S.C. § 1002(5) (defining "employer" as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity"); id. § 1002(7) (defining "participant" as "any employee or former employee of an employer, . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit"); id. § 1002(8) (defining "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder"); id. § 1002(21)(A) (defining "fiduciary" as "a person is a fiduciary with respect to a plan to the extent (I) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan").

7

providers may bring a claim under § 1132(a) if the provider is "suing as an <u>assignee</u> of a beneficiary's rights to the <u>benefits</u> under an ERISA plan." <u>Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Group, Inc.</u>, 187 F.3d 1045, 1051 (9th Cir. 1999); <u>see also id.</u> ("ERISA does not prohibit the assignment by a beneficiary of his or her right to reimbursement under a health care plan to the health care provider."). In such cases, the beneficiary has a right to reimbursement from the ERISA plan and assigns that right to the provider. The provider, therefore, "stands in the shoes of the beneficiary" and "the terms of the benefit plan [are] the provider's only basis for his reimbursement claim." <u>Id.</u>

In this case, however, plaintiff has not alleged and defendant has not submitted evidence suggesting that J.L. has assigned her rights to plaintiff.[4] See <u>Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan</u>, 388 F.3d 393, 401 (3d Cir. 2004) ("As the party seeking removal, the Plan bore the burden . . . of establishing the existence of an assignment. . . . The [absence of an assignment] may . . . entitle it to judgment on the Hospital's breach of contract claims in a court of competent jurisdiction. It does not, however, convert those breach of contract claims into derivative claims for benefits under § [1132](a).").

Unlike a third party medical provider that is suing as

---

[4] In its opposition, defendant makes the conclusory contention that J.L. has assigned her rights to plaintiff (Def.'s Opp'n to Pl.'s Mot. for Remand 3:15-16); however, defendant submits nothing, such as a declaration from J.L., to substantiate this statement.

8

an assignee of a beneficiary's rights, plaintiff's Complaint purports to enforce its own rights. Specifically, plaintiff's first claim for breach of contract does not implicate J.L.'s rights under the Benefit Agreement because the claim relies only on the amount of payment provided for in the HSA and Payor Agreement.[5] See Blue Cross of Cal., 187 F.3d at 1051 ("The dispute here is not over the right to payment, which might be said to depend on the patients' assignments to the Providers, but the amount, or level, of payment, which depends on the terms of the provider agreements."). Plaintiff's second through fourth claims, for breach of implied contract, negligent misrepresentation, and quantum meruit, derive exclusively from representations defendant made to plaintiff in confirming J.L.'s eligibility for benefits. See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S., 497 F.3d 972, 977 (9th Cir. 2007) ("Because [plaintiff's] claims arise from [defendant's] contractual obligation to [plaintiff]--an obligation that arose when [defendant] represented that [the beneficiary] was covered by the Plan--[plaintiff's] claims do not 'relate to' 'benefits'

---

[5] While plaintiff's breach of contract claim purports to enforce the HSA and Payor Agreement, plaintiff's reliance on these contracts is questionable because Stanislaus Foundation, not defendant, executed the HSA with plaintiff and plaintiff is not a party to the Payor Agreement. See MultiCare Health Sys. v. Maplehurst Bakeries Inc., 265 F. App'x 685, 686-87 (9th Cir. 2008) ("[Plaintiff's] claim fails because [defendant] is not a party to the Payor Agreement and does not owe [plaintiff] a duty or payment obligation under the Payor Agreement. . . . Critical to the holding in Blue Cross was the fact that separate payor-provider agreements existed between the providers and [the payors]."). Nonetheless, and without addressing the merits of plaintiff's breach of contract claim, it is clear that plaintiff is not attempting to enforce the ERISA Benefit Agreement or J.L.'s rights under that plan.

9

to [the beneficiary]."); see also The Meadows v. Employers Health Ins., 47 F.3d 1006, 1008 (9th Cir. 1995) ("The question before us [] is whether ERISA preempts claims by a third-party who sues an ERISA plan not as an assignee of a purported ERISA beneficiary, but as an independent entity claiming damages. We hold that ERISA does not.").

Defendant also contends that ERISA preempts plaintiff's claims because the amount of defendant's payment responsibility depends on the interpretation of "in-patient" and "out-patient" care as used in the Benefit Agreement.[6] Defendant's argument is misguided because the need to interpret the Benefit Agreement in this case is relevant only when determining whether plaintiff's claims "relate to" an ERISA plan. See Peralta v. Hispanic Bus., Inc., 419 F.3d 1064, 1069 (9th Cir. 2005) (a claim may "relate to" an ERISA plan if adjudicating the claim requires interpretation of the plan); Blue Cross of Cal., 187 F.3d at 1051 ("Where the meaning of a term in the Plan is not subject to dispute, the bare fact that the Plan may be consulted in the course of litigating a state-law claim does not require that the claim be extinguished by ERISA's enforcement provision."). The need to interpret the Benefit Agreement, however, cannot give plaintiff standing to assert its non-derivative rights under section 1132(a). See Toumajian v. Frailey, 135 F.3d 648, 654 (9th Cir. 1998) ("Section 1132(a) of ERISA, by its express terms, limits the causes of action that are available under the statute,

---

[6] Plaintiff contends that, while these terms are at issue, the dispute revolves around the use of the terms in the HSA.

10

as well as by whom and against whom they may be brought.").

Therefore, plaintiff's claims do not fall "within the scope of ERISA's civil enforcement found in § 1132(a)" because plaintiff seeks to enforce its independent and non-derivative rights and cannot assert those rights under ERISA. Toumajian, 135 F.3d at 654; see also Fresno Cmty. Hosp. v. UFCW Employers Benefit Plan of N. Cal. Group Admin., L.L.C., No. 06-1244, 2006 WL 3850734, at *13 (E.D. Cal. Dec. 19, 2006) ("ERISA does not preempt the state law claims of plaintiffs who are without standing to challenge ERISA violations.") (citations omitted). Without the ability to characterize any of plaintiff's claims as coming within ERISA's civil enforcement provision, ERISA cannot completely preempt any of plaintiff's claims and this court thereby lacks jurisdiction over this action. See Toumajian, 135 F.3d at 657 ("Our analysis of [plaintiff's] original Complaint suggests that because his asserted state law claims do not fall within the civil enforcement provisions of § 1132(a) of ERISA, the district court lacked jurisdiction from the outset.").

Upon concluding that the court does not have subject matter jurisdiction because plaintiff's claims are not completely preempted, the court must end its inquiry and withhold deciding whether defendant has a defense of conflict preemption--i.e., whether plaintiff's claims "relate to" an ERISA plan:

> Th[e] distinction [between complete and conflict preemption] is important, for if the doctrine of complete preemption does not apply, even if the defendant has a defense of "conflict preemption" within the meaning of § 1144(a) because the plaintiff's claims "relate to" an ERISA plan, the district court, being without subject matter jurisdiction, cannot rule on the preemption issue. The district court lacks power to do anything but remand

11

```
         the case to the state court where the preemption issue
         can be addressed and resolved.
```
<u>Id.</u> 135 F.3d at 655; <u>see also id.</u> ("Because we hold that the district court had no jurisdiction [due to the lack of complete preemption], we do not reach [plaintiff's] claim that his state law claims do not 'relate to' an ERISA plan within the meaning of § 1144(a).").

Accordingly, because ERISA does not completely preempt any of plaintiff's state law claims, this court lacks federal subject matter jurisdiction and must grant plaintiff's motion to remand the case to state court.

Pursuant to 28 U.S.C. § 1447, "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." <u>Martin v. Franklin Capital Corp.</u>, 546 U.S. 132, 141 (2005) (citation omitted).

While the court ultimately disagreed with defendant's decision to seek removal, the court cannot find that it lacked an "objectively reasonable basis" when doing so. Here, if plaintiff had in fact obtained an assignment of J.L.'s rights and sought to enforce her rights, complete preemption would in fact exist. While defendant failed to provide any evidence of such an assignment, it does not appear that plaintiff informed defendant that such an assignment does not exist. (<u>See</u> Whitecotton Decl.

(omitting any reference to an assignment in his discussion with defense counsel); Pl.'s Reply in Support of Mot. to Remand 6:21-24 (stating only that an assignment of benefits is irrelevant without indicating whether such an assignment exists)); see also Martin, 546 U.S. at 141 ("A plaintiff's . . . failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees."). Plaintiff's Complaint, which refers to the HSA, Payor Agreement, and Benefit Agreement, also loosely uses varying terms to refer to each agreement and only a careful reading reveals that plaintiff's use of the word "Agreement" in its breach of contract claim refers to the HSA. (Compl. at ¶¶ 11, 20.) Accordingly, as defendant could have reasonably believed that plaintiff's breach of contract claim was a derivative claim that ERISA completely preempted, the court will not award plaintiff its attorney's fees under § 1447(c).

     IT IS THEREFORE ORDERED that plaintiff's motion to remand the action to state court be, and the same hereby is, GRANTED; and plaintiff's motion for attorney's fees be, and the same hereby is, DENIED.

     This matter is hereby REMANDED to the Superior Court of the State of California in and for the County of Stanislaus.

DATED: August 28, 2008

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE